IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CRAIG A. P.,

                    Plaintiff,

            v.                                    Civil Action No.
                                                  5:22-CV-0322 (FJS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINKSY LAW GROUP                     KAELIN RICHARD, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                NATASHA OELTJEN, ESQ.
OFFICE OF GENERAL COUNSEL             GEOFFREY PETERS, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the

relevant times and, accordingly, is ineligible for the supplemental security

income ("SSI") benefits for which he has applied.  The matter has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

For the reasons set forth below, I recommend a finding that the

Commissioner's determination did not result from the application of proper

legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in November of 1985, and is currently thirty-seven

years of age.  He was thirty-four years old on January 21, 2020, the date

upon which he filed his application for benefits.  Plaintiff measures six feet

and two inches in height, and weighed approximately two hundred and

sixty pounds during the relevant period.  He lives on his own in an

apartment in Auburn, New York.

Plaintiff reports that he graduated high school and completed some

college courses, but did not receive a degree.  He has worked in the past

as an automotive parts salesman and store manager, and a dock worker

for a commercial bakery.  He stopped working in September of 2012.

Plaintiff alleges that he suffers from degenerative disc disease in his neck and lower back, multiple fractures in his right hand, major depressive disorder, a generalized anxiety disorder, and chronic diarrhea post gallbladder removal. As is relevant to his application, plaintiff has treated for his physical impairments with Dr. Jeffrey LeGrett with Internal Medicine Associates of Auburn, Syracuse Orthopedic Specialists, New York Spine and Wellness, Auburn Orthopedic Specialists, and Auburn Community Hospital. He has also received treatment for his mental impairments from Psychiatric Mental Health Nurse Practitioner ("NP") Stephanie Bizzari at Cayuga County Community Mental Health Center and Unity House of Cayuga County.

Plaintiff alleges that he stopped working due to back pain, which he reports is constant, radiates into his hips, and makes it difficult for him to do much of anything, including sitting in a normal chair. He states that he was previously taking pain medication, but now uses marijuana, which does not relieve the pain but instead makes it so he does not focus on the pain. Plaintiff also testified that he experiences pain in his neck that causes difficulties with carrying even light objects, and that he has a long history of breaking bones in his right hand such that he does not have much feeling in some of his fingers. He further reports difficulty walking down stairs due

to a knee issue.  Plaintiff also claims to experience significant anxiety and depression, which cause diarrhea, excessive sleep, isolation, and thoughts of dying.  He shops only twice a month and stays home most of the time because he does not deal well with people and he is afraid he will have a diarrhea episode while outside the house.  In terms of activities, plaintiff reports that he can perform self-care and grooming, although depression makes those difficult at times, and is able to do chores albeit at his own pace.  When walking his dog, he must take breaks to sit, must slouch when he sits due to his pain, and has difficulty lifting, carrying, and reaching because of neck pain.

II.   PROCEDURAL HISTORY

   A.   Proceedings Before the Agency

   Plaintiff applied for SSI payments under Title XVI of the Social Security Act on January 21, 2020.[1]  Administrative Law Judge ("ALJ") Elizabeth W. Koennecke held administrative hearings related to that application on June 8, 2021, and November 9, 2021, to address plaintiff's SSI application, and subsequently issued a decision on November 19,

---

[1]   An earlier application, filed by the plaintiff seeking disability insurance benefits under Title II of the Act, was denied on May 1, 2019, in a decision by another Administrative Law Judge.  Administrative Transcript at 153-65.  There is no indication in the record that plaintiff sought review of that determination.

2021, finding that plaintiff was not disabled.  That opinion became a final determination of the agency on February 15, 2022, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Koennecke applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff has not engaged in substantial gainful activity since the date upon which he filed his application for benefits.  The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including degenerative disc disease of the cervical and lumbar spine, and mental diagnoses as variously characterized in the record.  As part of her step two finding, ALJ Koennecke also concluded that plaintiff's alleged obesity post gastric bypass surgery, hypertension, and right-sided metacarpal fractures do not constitute severe impairments within the meaning of the Act.

At step three, ALJ Koennecke examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed

conditions set forth in those regulations, specifically considering Listings

1.15, 1.16, 12.04, and 12.06.

ALJ Koennecke next surveyed the available record evidence and

concluded that, notwithstanding her conditions, plaintiff retains the residual

functional capacity ("RFC") to perform a range of work at the sedentary

exertional level, as defined by the controlling regulations, with the following

exceptions:

> he can perform all postural activities frequently and
> retains the ability to: understand and follow simple
> instructions and directions; perform simple tasks
> independently; maintain attention and concentration
> for simple tasks; regularly attend to a routine and
> maintain a schedule; handle simple, repetitive work-
> related stress in that the claimant can make
> occasional decisions directly related to the
> performance of simple tasks in a position with
> consistent job duties that does not require the person
> to supervise or manage the work of others; should
> avoid work requiring more complex interaction or
> joint effort to achieve work goals; and can tolerate
> superficial contact with the public.

ALJ Koennecke went on to step four and concluded that plaintiff is

unable to perform his past relevant work.  The ALJ then proceeded to step

five and, after eliciting testimony from a vocational expert, found that

plaintiff remains able to perform available work in the national economy,

citing the representative positions of document preparer, addresser, and

escort vehicle driver.  Based upon these findings, ALJ Koennecke

determined that plaintiff was not disabled at the relevant times.

   C.   This Action

   Plaintiff commenced this action on April 5, 2022.[2]  In support of his

challenge to the ALJ's determination, plaintiff argues that the ALJ failed to

properly assess any of the opinions from plaintiff's treating sources or the

consultative examiner in the record by failing to adequately and fully

consider the factors of supportability and consistency related to those

opinions.  Dkt. No. 10.

   Oral argument was conducted in this matter, by telephone, on May

25, 2023, at which time decision was reserved.

III.   DISCUSSION

   A.   Scope of Review

   A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has
been treated in accordance with the procedures set forth in the recently enacted
Supplemental Social Security Rules and General Order No. 18.  Under those
provisions, the court treats the action procedurally as if cross-motions for judgment on
the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal

8

whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

### B.  Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    <u>Analysis</u>

Plaintiff challenges the ALJ's assessment of the opinion evidence provided individually by consultative examiner Dr. John Laurence Miller and treating primary care physician Dr. Jeffrey LeGrett, as well as the joint statements submitted by Dr. Maria Iannolo and therapist Traci Zmarthie, and by Dr. Michael Pratts and NP Stephanie Bizzari. Dkt. No. 10. Specifically, plaintiff argues that the ALJ generally failed to appropriately and fully consider the regulatory factors of supportability and consistency when finding all of the above opinions to be either only partially persuasive or unpersuasive altogether.

Because plaintiff's application was filed after March 27, 2017, this

case is subject to the amended regulations regarding opinion evidence.

Under those regulations, the Commissioner "will not defer or give any

specific evidentiary weight, including controlling weight, to any medical

opinion(s), . . . including those from your medical sources," but rather will

consider whether those opinions are persuasive by primarily considering

whether the opinions are supported by and consistent with the record in the

case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL

168819, at *5853 (stating that, in enacting the new regulations, the agency

was explicitly "not retaining the treating source rule").  An ALJ must

articulate in his or her determination as to how persuasive he or she finds

all of the medical opinions and explain how he or she considered the

supportability[3] and consistency[4] of those opinions.  20 C.F.R. §

416.920c(b).  The ALJ also may – but is not required to – explain how he or

---

[3]     On the matter of supportability, the regulations state that "[t]he more relevant the
objective medical evidence and supporting explanations presented by a medical source
are to support his or her medical opinion(s) or prior administrative medical finding(s), the
more persuasive the medical opinion or prior administrative medical findings(s) will be."
20 C.F.R. § 416.920c(c)(1).

[4]     On the matter of consistency, the regulations state that "[t]he more consistent a
medical opinion(s) or prior administrative medical finding(s) is with the evidence from
other medical sources and nonmedical sources in the claim, the more persuasive the
medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §
416.920c(c)(2).

she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion. 20 C.F.R. § 416.920c(c).

Although the ALJ's decision is thorough in many respects, and includes a comprehensive recitation of plaintiff's medical treatment history spanning across eleven pages, I find that her explanation for finding the joint opinion of Dr. Pratts and NP Bizzari not to be particularly persuasive is insufficient to allow meaningful judicial review as to all aspects of that opinion, such that remand is required.

In a form dated May 13, 2021, treating psychiatric nurse practitioner Stephanie Bizzari and Dr. Michael Pratts co-signed an assessment of plaintiff's mental functioning.[5] Administrative Transcript ("AT") at 2686-88.[6]

---

[5]    I note that, although Dr. Pratts co-signed this opinion, it was NP Bizzari that appears to have provided direct treatment to plaintiff, and it is not clear that Dr. Pratts had any significant direct contact with him.

[6]    The administrative transcript is found at Dkt. No. 8, and will be referred to throughout this decision as "AT __."

In it, they indicated that plaintiff is diagnosed as suffering from a major depressive disorder with associated symptoms of anhedonia, decreased energy, feelings of guilt or worthlessness, mood disturbance, emotional withdrawal or isolation, persistent disturbance of mood or affect, and sleep disturbance.  AT 2686.  They opined that, as a result of his conditions, he is "seriously limited, but not precluded"[7] in his abilities to complete a normal workday or workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes, and interacting appropriately with the general public.  AT 2687.  They further opined that plaintiff is "limited but satisfactory" in his abilities to maintain regular attendance and be punctual within customary usually strict tolerances, respond appropriately to changes in a routine work setting, deal with normal work stress, be aware of normal hazards and take appropriate precautions, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness, as well as that plaintiff was not

---

[7]    In the form, this term is defined to mean that the patient's "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances."  AT 2687.

limited in many other areas.  AT 2687.  For a supporting explanation, the

sources noted that plaintiff struggles with regulating himself under

perceived conflict, causing difficulty at times in getting along with

coworkers, accepting criticism, and interacting with the public.  *Id.*  They

noted that plaintiff takes Effexor, Wellbutrin, and trazadone, but that those

medications do not impact his ability to work.  AT 2688.  They further

opined that plaintiff's psychiatric condition exacerbates his experience of

pain, that he has repeated episodes of decompensation which cause him to

withdraw from situations or experience exacerbations of his symptoms, that

he would likely be off-task ten percent of the workday, and could be

predicted to be absent about three days per month due to his impairments

or treatment.  *Id.*  The sources further stated that plaintiff's condition had

been at the same level for all of the relevant time period, as well as that

plaintiff does not suffer from an alcohol or substance abuse problem.[8]  AT

2690.

---

[8]    I note that, somewhat confusingly, the sources also checked "no" in response to the next question, which asks, if the provider has checked "yes" related to the question of whether the claimant has an abuse problem, whether the current limitations would remain if use of drugs or alcohol was stopped.  AT 2690.  Because the sources checked "no" in response to the first question, it is not clear why they answered the second question, or if one or both of the answers to those questions was based on a mistake.

The ALJ found this opinion to be not particularly persuasive, reasoning that (1) the sources did not provide any specific explanation to support the limitations they opined and did not cite specific treatment notes to support those opined limitations, (2) their opinion that plaintiff does not have an alcohol or substance abuse problem conflicts with the treatment evidence throughout the record, which reflects issues with alcohol use, and (3) their opinion that plaintiff would be absent from work three days per month and off-task ten percent of the workday "is speculative and inconsistent with the claimant's lack of attention/concentration deficits during most examinations."  AT 32.  Addressing the opinion that plaintiff would be off-task or require absenteeism, the ALJ further discussed that the relevant regulation's definition of the supportability factor involves an assessment of the "objective medical evidence and supporting explanations presented by a medical source," and, that in this case, the treatment providers did not provide any supporting explanations and the objective medical evidence to support such limitations is lacking.  AT 33.

It is not clear to me that the ALJ appropriately and fully applied the relevant factors of supportability and consistency as to this opinion.  With respect to supportability, the ALJ reasonably points to the fact that the sources have not cited any specific treatment records or provided

explanation on the opinion form to support their opinions related to the symptoms noted on the first page of the opinion.  AT 32.  However, the explanation provided by the author on the opinion form is only one part of the supportability analysis.  The other, equally relevant, part derives from the treatment records of that source, whether or not the source has specifically cited to them.  *See* 20 C.F.R. § 416.920c(c)(1) (noting that the analysis involves considering both "the objective medical evidence and supporting explanations presented by a medical source").  Although the ALJ discussed many of NP Bizzari's treatment records in her lengthy recitation of the plaintiff's treatment history earlier in her decision, it is not clear whether she specifically considered whether those records support any portion of this joint opinion.  This is a particularly important omission in this case because NP Bizzari had a fairly long-term treatment relationship with plaintiff throughout the relevant period at issue, and provided the bulk of plaintiff's mental health treatment during that time period.  Both the ALJ's own recitation of the evidence and my independent review of NP Bizzari's records show that they arguably contain findings that would be supportive of some of her opined limitations, including notations of periods of isolating at home and difficulty getting along with others.  *See e.g.*, AT 852, 856, 1555, 1563, 2258, 2262, 2586, 2594, 2598, 2695, 2698, 2954, 2956.

There is also evidence from both plaintiff's reports to NP Bizzari and her mental status examinations reflecting that plaintiff continued to experience mental symptoms of anxiety and depression, including at times poor frustration tolerance and poor impulse control. *See e.g.*, AT 854, 857-58, 861, 865, 1557, 1561, 1564-65, 1809-10, 1814, 2588, 2591-92, 2596, 2599, 2602, 2700, 2704, 2707. Irrespective of whether the ALJ discussed such findings in her decision, she did not appropriately draw a logical bridge between those findings and her conclusions regarding NP Bizzari's opinion.

I acknowledge that the ALJ did state that the sources "generally finding that the claimant has some mental limitations but is not precluded from any mental tasks is generally consistent with their treatment records and the other evidence of record," which appears to express a consideration of both the supportability and consistency factors as to those limitations. AT 32. However, the findings by NP Bizzari and Dr. Pratts to the effect that plaintiff was not entirely precluded in these areas does not negate the fact that they nonetheless opined that he is *seriously limited* in his ability to perform such tasks, a qualification that the ALJ seems to have ignored. Indeed, even if plaintiff was not precluded entirely in these areas, it is not clear to me that the ALJ incorporated the "seriously limited" portion

for all of those limitations into the RFC.  By way of example, the RFC does not contain any restrictions that would appear to account for serious limitations in the plaintiff's abilities to complete a normal workday or workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, or to accept instructions and respond appropriately to criticism from supervisors, despite the ALJ seemingly finding those opined "seriously limited but not precluded" limitations to be generally consistent with the record evidence.  To the extent that the ALJ rejected the "seriously limited" part of that qualification, as appears to be the case given that she found this opinion to overall be not particularly persuasive, again, she has not provided a sufficient articulation of her reasons for doing so, particularly with respect to the factors of consistency and supportability, as was previously discussed.

The ALJ's rejection of the sources' assessment that plaintiff does not have an alcohol abuse problem also does not bolster her findings regarding the functional portions of the joint opinion.  Even if the ALJ was correct in rejecting the statement that plaintiff does not have an alcohol use problem based on the plaintiff's treatment records that admittedly show issues with alcohol use, the existence of alcohol abuse does not inherently mean that a

plaintiff does not experience significant mental health symptoms or work-

related limitations, and does not, on its own, justify the rejection of the other

portions of this opinion.  Indeed, whether alcohol abuse is material in a

disability case is relevant only after the agency has found that a claimant is

disabled.  *See* Social Security Ruling ("SSR") 13-2p (describing the

analytical process an ALJ must following in a case where alcohol or drug

abuse are present).  Notably, notwithstanding the statement that plaintiff

does not have an alcohol abuse issue, there is nothing in the opinion to

suggest, one way or the other, whether NP Bizzari and Dr. Pratts factored

plaintiff's alcohol use into their opined limitations.[9]  Accordingly, to the

extent the ALJ relied on plaintiff's alcohol abuse as a basis for rejecting the

functional limitations in this opinion, such action was not proper and does

not support her findings.

As to the ALJ's rejection of the absenteeism and off-task limitations, I

likewise find her analysis to be deficient.  As was discussed above, the ALJ

rejected those limitations because of her belief that they are speculative

and inconsistent with examination findings documenting normal

---

[9]      Again, it is not clear how their checking of a box that such limitations would still
be present in the absence of alcohol use can be reconciled with their statement that
plaintiff does not have an alcohol use problem, or whether their checking of that second
box was in error.  This is an issue that the ALJ should explore further on remand if she
finds that plaintiff's alcohol use is a pertinent factor in the analysis of this opinion.

concentration or attention, and due to the general lack of supporting

explanation or support from the objective medical evidence.  However, as

was the case with the ALJ's rejection of the more functional portions of this

opinion, the ALJ has again failed to explain whether she appropriately

considered the evidence included in NP Bizzari's treatment notes when

assessing whether these limitations are supported, and has not tethered

any discussion of those treatment notes to her specific finding regarding

the opinion.  Particularly as to the opinion regarding absenteeism, the many

notations in NP Bizzari's treatment notes regarding periods of isolating at

home, difficulty getting along with others, poor impulse control, low

frustration tolerance, and difficulty coping with depression and anxiety

arguably support some degree of absenteeism and/or off-task behavior.

Yet the ALJ does not adequately address such evidence in rejecting that

limitation.  Although the supportability factor involves primarily an

assessment of the objective medical evidence and supporting explanations,

the ALJ's analysis of plaintiff's functioning cannot wholly exclude the

subjective reports of the claimant made to that provider and documented in

treatment records, as such reports inform the provider's treatment of the

claimant, particularly in cases involving mental health and other such less

obvious impairments that are less conducive to confirmation through

objective means.  *See Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x

7, 9 (2d Cir. 2020) (finding error in ALJ's rejection of treating physician's

opinion because it was "largely based on [plaintiff's] self-reported

symptoms, rather than on diagnostic testing" in light of the nature of mental

health impairments, which are "less susceptible to objective testing and

assessment," and the fact that, as a long-time treating source, the opinion

was not based solely on subjective reports, but on the source's "firsthand

observations of [plaintiff]'s behavior and affect over the course of dozens of

meetings spanning several years").  Further, apart from the supportability

factor, the consistency factor specifically requires an assessment of

"evidence" from both medical and nonmedical sources, which inherently

includes evidence beyond objective medical findings.  For these reasons, I

find that the ALJ's specific rationale for her finding concerning the limitation

related to absenteeism and off-task time to be inadequate.  Although the

ALJ did find that plaintiff's statements regarding the intensity, persistence

and limiting effects of his impairments and symptoms were not entirely

consistent with the medical and other evidence, that finding does not

insulate her from addressing whether certain reports, along with other

relevant objective findings contained with NP Bizzari's treatment records

and the records of other relevant sources, might supply a basis for adopting
some of the limitations contained within this opinion.

Because the ALJ failed to fully and appropriately consider the
relevant factors of consistency and supportability as to the opinion from Dr.
Pratts and NP Bizzari, I recommend that this matter be remanded for
further proceedings.[10]

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the
plaintiff in support of her challenge to the Commissioner's determination, I
recommend a finding that the determination did not result from the
application of proper legal principles and is not supported by substantial
evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the
pleadings (Dkt. No. 10) be GRANTED, defendant's motion for judgment on
the pleadings (Dkt. No. 11) be DENIED, the Commissioner's decision be
VACATED, and this matter be remanded for further proceedings consistent
with this decision and order, without a directed finding of disability, pursuant

---

[10]    As to the arguments raised by plaintiff regarding the opinions from Dr. Miller, Dr.
Legrett, and Dr. Iannolo, those findings are generally supported by sufficient explanation
and substantial evidence.  However, as always, on remand the ALJ should reevaluate
all findings to account for any changes brought about by her new assessment of the
evidence.

to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:　　May 31, 2023
　　　　　Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge